

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JANE DOE-3, § | | |
| Plaintiff, § | | |
| § | | |
| vs. § | CIVIL ACTION NO. 4:16-2576-MGL | |
| § | | |
| HORRY COUNTY, SOUTH CAROLINA, § | | |
| HORRY COUNTY POLICE DEPARTMENT, § | | |
| SAUNDRA RHODES, SCOTT § | | |
| RUTHERFORD, THOMAS DELPERCIO, § | | |
| WILLIAM SQUIRES, and DALE § | | |
| BUCHANAN, § | | |
| Defendants. § | | |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Plaintiff Jane Doe-3 (Doe-3) filed this lawsuit against Defendants Horry County, South Carolina, the Horry County Police Department (HCPD), Troy Allen Large (Large), Saundra Rhodes (Rhodes), Scott Rutherford (Rutherford), Thomas Delpercio (Delpercio), William Squires (Squires), and Dale Buchanan (Buchanan), alleging violations of her constitutional rights, 42 U.S.C. § 1983, and a state law claim of negligence/gross negligence.  The Court has federal-question jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state claim under 28 U.S.C. §  1367.

Pending before the Court is Defendants Rhodes, Rutherford, Delpercio, Squires, and Buchanan's (collectively Defendants) motion for summary judgment.  Having considered the

motion, Doe-3's response, Defendants' reply, the record, and the relevant law, the Court will deny Defendants' motion for summary judgment.

## II.     FACTUAL AND PROCEDURAL HISTORY

Doe-3 says she initially came into contact with Large, a detective with the HCPD, in 1996 when he was assigned to investigate her case after she made allegations her then-husband assaulted her. Confidential Exhibit 1, Page 23, Lines 11-Page 24, Line 2. Doe-3 encountered him again in March of 1998 when he was assigned to investigate another domestic violence incident in which she was shot once through the hip and four times through the hand by her then-husband. Confidential Exhibit 1, Page 24, Lines 12-20.

Doe-3 stated she had no real concerns regarding her contact with Large during this time period, except he was "very flirty." Confidential Exhibit 1, Page 26, Line 20-Page 27, Line 10. According to Doe-3, after the court proceedings were finalized leading to her then-husband's conviction, she left South Carolina in 2001 and moved to Tennessee. Confidential Exhibit 1, Page 25, Lines 11-21.

After Doe-3 left South Carolina, she said she lost contact with Large for approximately ten years. Confidential Exhibit 1, Page 33, Lines 16-21. She moved back to South Carolina in 2005; but did not come into contact with him again until January 2015, after a third domestic violence incident in which she accused her then-husband of threatening her and members of her family with a firearm. Confidential Exhibit 1, Page 34, Line 19-Page 35, Line 12. Large came to her home in light of this report of domestic violence. Confidential Exhibit 1, Page 35, Lines 2-8.

Doe-3 testified that Detective Large, after responding to the January 2015 domestic violence incident, began to visit her between two and three times a week. Confidential Exhibit 1, Page 40, Line 1-8. She stated that, between January of 2015 and December of 2015, Large assaulted her on fifty occasions, which included multiple instances of sexual assault. Confidential Exhibit 1, Page 127, Line 18-Page 128, Line 7; Page 123, Line 24-Page 125, Line 9. Doe-3 also attested Large coerced her into participating in a private wrestling match with another victim of domestic violence at a law enforcement officer's home in North Carolina. Confidential Exhibit 1, Doe-3 Depo. at Page 40, Line 22-Page 41, Line 3; Page 43, Lines 6-23; Page 118, Lines 21-24; Page 129, Lines 1-8.

Doe-3 stated she felt restrained from leaving because of the presence of armed law enforcement officers at the fight. Confidential Exhibit 1, Page 118, Lines 21-24. Doe-3 testified her encounters with Large were not consensual and that she was repulsed by him; but she felt forced to engage in these activities as a result of his position of authority. Confidential Exhibit 1, Page 71, Line 10-Page 72, Line 5.

The HCPD received a report in July 2015 of criminal sexual conduct by Large. Confidential Exhibit 4. After investigating the July 2015 allegations, the HCPD Office of Internal Affairs sustained the allegations. *Id*. The HCPD subsequently referred the case to the South Carolina Law Enforcement Division in November 2015. Confidential Exhibit 2.

The Horry County Grand Jury indicted Large on September 15, 2016, bringing eleven counts of criminal sexual conduct and misconduct in office against him. Confidential Exhibit 3. Two of the eleven counts specifically address his alleged criminal interactions with Plaintiff. *Id.*

During the relevant period of time, "Rhodes was the duly appointed Chief of Police for the Horry Count Police Department. As such, she was the commanding officer of . . . Large,"

Complaint ¶ 4; and "Rutherford, Delpercio, Squires, and Buchanan were the supervising officers of . . . Large," *Id.* ¶ 5.

Doe-3 filed this action in the Horry County Court of Common Pleas. Defendants thereafter removed the case to this Court. Defendants subsequently filed this motion for summary judgement, Doe-3 filed her response in opposition, and Defendants filed their reply. Afterwards, the case was reassigned to this Court.

Large, who was initially a defendant in this case, died after Doe-3 filed this lawsuit. She dismissed Large and Delpercio from the action after Defendants filed their motion for summary judgment.

## III. STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996). "Summary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**IV.**     **CONTENTIONS OF THE PARTIES**

Defendants contend Doe-3's allegations of Defendants' actions and/or inactions fail to rise to the level of a violation of the constitution or federal law. In addition, according to Defendants, they are entitled to sovereign and qualified immunity. Defendants also claim they have no liability under 42 U.S.C. § 1983 as they are not "persons" as that term is defined in the statute.

Doe-3 refutes each of Defendants' arguments.

## V. DISCUSSION AND ANALYSIS

### A. *Whether Doe-3's claims rise to a violation of either the constitution or federal law*

First, Defendants maintain Doe-3 has failed to demonstrate her claims amount to a violation of either the constitution or federal law.

#### 1. *Whether physical harm can constitute a constitutional violation*

The Fourth Circuit clearly established in *Jones v. Wellham*, 104 F.3d 620 (4th Cir. 1997), "an individual's constitutional right . . . under the Fourteenth Amendment not to be subjected by anyone acting under color of state law to the wanton infliction of physical harm." *Id*. at 628. In *Jones*, the defendant, a county police officer, allegedly raped the plaintiff during a traffic stop. *Id*. at 622.

The *Jones* court held the district court did not err in instructing "the jury that if it found that [the defendant] forcibly raped [the plaintiff] under the circumstances she claimed, this would constitute a violation of her constitutional rights under the Fourteenth Amendment. *Id*. According to the Fourth Circuit, the district court's instruction "effectively defined the Fourteenth Amendment right to bodily integrity specifically at issue in [the] case and accurately stated what had to be found from the evidence in order to impose liability for its violation." *Id*.

Defendants lead out the argument section of their motion with this: "The alleged actions/inactions claimed by [Doe-3] do not rise to the level of a constitutional violation and she did not suffer any infringement of constitutional and/or federal rights, privileges or immunities or violations of law." Defendants' Motion 5 (emphasis omitted). Yet, they offer no argument

regarding Large's alleged actions. Instead, their focus is on whether they, as Large's supervisors, have any liability for Large's alleged misconduct.

### 2. *Whether supervisory officials may be held liable for the constitutional violations of their subordinates*

It is also clearly established in the Fourth Circuit "that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). "[L]iability is not premised upon respondeat superior but upon a recognition that supervisory indifference or tacit authorization of subordinates misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id*. (citation omitted) (internal quotation marks omitted).

"Recognizing that supervisory liability can extend to the highest levels of state government, [the Fourth Circuit has] noted that liability ultimately is determined by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." *Id*. (citation omitted) (internal quotation marks omitted). "[T]his issue is ordinarily one of fact, not law." *Id* at 799.

A plaintiff must satisfy three elements to establish supervisory liability under § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id*. (citation omitted) (internal quotation marks omitted). " *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The Court will, thus, apply the evidence Doe-3 has submitted to determine if she is able to meet these three requirements.

> **a.** **whether Defendants, as Large's supervisors, had actual or constructive knowledge Large was allegedly engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Doe-3**

"To satisfy the requirements of [this] element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Shaw*, 13 F.3d at 799. "Establishing a pervasive and unreasonable risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id*. (citation omitted) (internal quotation marks omitted). Doe-3 has marshaled a mountain of evidence of Large's alleged misdeeds for the Court's consideration, which she offers in granular detail.

First, the Court turns to the July 7, 2003, correspondence from Large's father-in-law, Kenneth M. Evans. Confidential Exhibit 5. The letter is addressed to Rutherford, with copies to, among others, the HCPD Chief, a HCPD Captain, and the Chairman of the Horry County Council. *Id*. The letter follows up on a meeting Evans had with members of the HCPD in which he raised his concerns regarding Large's interactions with crime victims. *Id*.

In the letter, Evans states Large spent several months nurturing a female crime victim in one of his cases. *Id*. According to Evans's letter, Large had moved her into his home while his wife was out of town. *Id*. Evans also claims Large used county vehicles for stalking purposes. Additionally,

8

he writes Large had been tipped off that his in-laws were going to meet with the HCPD officials regarding their concerns. *Id*.

Defendants maintain Evans's letter constitutes inadmissible hearsay. The Court will put off the issuance of a final ruling on that argument for another day. Suffice it to say, for purposes of this motion, the Court interprets the letter is not being offered for the truth of the matter asserted, but instead to demonstrate Defendants' notice of Large's alleged bad conduct.

Second, Doe-3 offers evidence Jane Doe-1 (Doe-1) contacted the HCPD and reported she had been the victim of a sexual assault on or about December 24, 2013. The case was assigned to Large, who contacted her on December 27, 2013. Confidential Exhibit 17. Doe-1 complains Large engaged in inappropriate behavior over the next six months, which included unwanted sexual advances and sexual assault. Confidential Exhibit 9.

Doe-3 introduces evidence of a March 2014 "in-house," off-the-books investigation concerning Large. The investigation, which commenced after a confidential informant report Large was frequenting Doe-1's home, was conducted at the request of Buchanan and Squires. Doe-1's home was under active investigation by the Horry County Drug Enforcement Unit. Confidential Exhibit 10, Page 39, Lines 10-22; Confidential 11; Confidential Exhibit 15; Confidential Exhibit 17.

Large's supervisors failed to conduct any interviews of Large, Doe-1, or the confidential informant as part of the "in-house" investigation. They also neglected to report the incident to the Office of Professional Standards/Internal Affairs. Confidential Exhibit 10, Page 40, Line 24-Page 43 Line 10.

As a result of the investigation, a GPS tracking device was placed on Large's police vehicle. Confidential Exhibit 12, Page 65, Lines 2-25. It appears the HCPD neglected to take any further action concerning the allegations at the time. Doe's law enforcement expert, Dr. Timothy Maher (Maher), states the report of Large's visits to Doe-1's residence should have initiated a formal investigation by the Office of Professional Standards or the South Carolina Law Enforcement Division. Confidential Exhibit 8.

Buchanan testified he later told Rutherford and Rhodes of the report from the confidential informant. According to Buchanan, Rutherford was upset he was not made aware prior to the placement of the GPS monitor on Large's vehicle. Confidential Exhibit 12, Confidential Deposition of Dale Buchanan, Page 59, Lines 18-25.

Third, Doe-3 submits evidence the HCPD conducted a formal Internal Affairs investigation in June 2014 concerning Large after Doe-1's report to the HCPD of Large's alleged sexual misconduct subsequent to her arrest on drug-related charges. Confidential Exhibit 15. Rhodes directed the HCPD close the investigation as unfounded. *Id*.

According to the investigative report, however: (1) Large admitted he had paid for Doe-1's prescription medications several times; (2) Large was frequenting Doe 1's home after he closed her case as unfounded; (3) Doe-1 told an Horry County employee Large attempted to touch her inappropriately; and (4) between December 2013 and May 2014, Large had called Doe-1's mobile phone approximately eighty times. Confidential Exhibit 15; Confidential Exhibit 16. Doe-3's expert maintains the findings in the Internal Affairs Investigation were sufficient to put a reasonable supervisory officer on notice (1) Large was abusing his authority as a law enforcement officer and (2) the abuse of authority was most likely related to his sexual desires. Confidential Exhibit 8. The

evidence shows, in addition to Rhodes, Squires, and Rutherford were actually aware of this investigation.

Fourth, Doe-3 submits evidence of reports regarding Large's alleged inappropriate behavior with Jane Doe-4 (Doe-4). Doe-4 states she had intermittent contact with Large from the fall of 2014 until February of 2015, when she entered a drug rehab facility. Confidential Exhibit 19, Page 54, Lines 3-16. According to Doe-4, Large sexually assaulted her during the Fall of 2014. Confidential Exhibit, Page 35, Lines 11-25. Prior to Doe-4 making that allegation, her mother had raised concerns about Large with the HCPD. Confidential Exhibit 20, Page 51, Line 15-Page 52, Line 20.

Doe-4's mother attested she spoke with a male police officer who identified himself as Large's supervisor. She informed him Large had been picking up her daughter and bringing her home high on drugs. Confidential Exhibit 20, Page 52, Line 20-Page 54, Line 25. She also expressed concerns Large "liked" her daughter. Confidential Exhibit 20, Page 55, Lines 9-19.

Large's supervisor took Doe-4's mother's name and informed her he would look into the matter. Confidential Exhibit 20, Page 55, Lines 20-23. Doe-4's mother is unable to state with certainty the date she called Large's supervisor. It appears from the evidence presented, however, the call occurred between the fall of 2014 and February 2015, which is when Doe-4 checked into a drug rehab facility.

Fifth, Doe-3 provides evidence to the Court the HCPD opened a formal Internal Affairs investigation into Large on or about July 13, 2015, to investigate Jane Doe-2's (Doe-2) allegations of Large's misconduct. Confidential Exhibit 4. According to Doe-2, during the time Large was assigned to investigate her case involving criminal sexual conduct, he offered to pay her if she would

11

allow him watch her fight with other women; and he talked about paying her for oral sex, among other things. *Id*. Rhodes and Rutherford were directly involved in this investigation.

On August 19, 2015, The HCPD sustained the allegations. *Id*. It referred the case to the State Law Enforcement Division for further investigation. Confidential Exhibit 2. On September 15, 2016, a grand jury indicted Large on eleven counts of criminal sexual conduct and misconduct in office. Of the eleven accounts, two specifically address his criminal interactions with Doe-3.

If a jury is presented with all this evidence, the Court is of the firm opinion it might well conclude Defendants "had actual or constructive knowledge that [Large] was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like [Doe-3]." *Shaw*, 13 F.3d at 799. As to their constructive knowledge, given the extent of Large's alleged misbehavior, along with the opportunities and duty Defendants had to be informed of his actions, a jury could conclude Defendants, at a minimum, had constructive knowledge of Large's conduct. *See Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987) ("Constructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed, or combinations of these.").

> **b.** ***whether Defendants' response was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices***

"A plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Shaw*, 13 F.3d at 799 (citation omitted) (internal quotation marks omitted). The plaintiff's burden of proof in establishing deliberate indifference is a heavy one because:

> [o]rdinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

*Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (citation omitted).

It is not a stretch to say a jury might also determine Doe-3 has established "deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id*. (citation omitted) (internal quotation marks omitted). The evidence detailed above is not of a single or isolated incident. It is for that reason a jury could conclude Large's supervisors "continued inaction in the face of documented widespread abuses . . . provides an independent basis for finding [they] either [were] deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." *Slakan*, 737 F.2d at 373) (citation omitted). Therefore, Doe-3 has also satisfied the second element required to establish supervisor liability.

### c. *whether there was an affirmative causal link between the Defendants' inaction and the particular constitutional injury suffered by Doe-3*

"Causation is established when the plaintiff demonstrates an affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff." Shaw, 13 F.3d at 799 (citation omitted) (internal quotation marks omitted). "This concept encompasses cause in fact and proximate cause." *Id*. "Proof of causation may be direct . . . where the policy commands the injury of which

the plaintiff complains . . . [or] may be supplied by [the] tort principle that holds a person liable for the natural consequences of his actions." *Slakan*, 737 F.2d at 376 (citation omitted).

Based on the evidence Doe-3 has offered, a jury could reasonably find Large's alleged constitutional violations were a natural and foreseeable consequence of Defendants' failure to address his purported pervasive propensities of the misconduct detailed above. Because there is ample evidence supporting Doe-3's claims Defendants were aware, or should have been aware, of Large's frequent misconduct, it follows that they knew Large's continued unchecked service on the force posed a constant and dangerous threat to women such as Doe-3. As such, a reasonable jury could find Defendants acted with deliberate indifference and that a causal link exists between Defendants' inaction and the alleged harm. Thus, Doe-3 has satisfied the third element necessary to establish supervisor liability, too.

For all these reasons, the Court holds there is sufficient evidence in the record for a jury to find Defendants, as Large's supervisors, are liable for the alleged constitutional injuries inflicted by Large.

### B. *Whether Defendants are entitled to sovereign immunity*

Defendants, employees of Horry County, argue they are entitled to sovereign immunity.

"[A] judgment against a public servant in his official capacity imposes liability on the entity that he represents." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citation omitted) (internal quotation marks omitted). And, "the Eleventh Amendment bars a damages action against a State in federal court." *Id.* Doe-3, however, sued Defendants in their individual capacities, not in their official capacities.

But, even if she had sued Defendants in their official capacities, sovereign immunity would be inapplicable inasmuch as "the bar of the Eleventh Amendment to suit in federal courts . . . . does not extend to counties and similar municipal corporations." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Therefore, Defendants are not entitled to sovereign immunity.

### C. *Whether Defendants are entitled to qualified immunity*

Defendants also contend they are entitled to qualified immunity.

"When confronting a claim of qualified immunity, [the Court] asks two questions. First, the court considers whether the officer in fact violated a constitutional right. *Mullenix v. Luna*, 136 S. Ct. 305, 313–14 (2015). "Second, the court asks whether the contours of the right were sufficiently clear that a reasonable official would have understood that what he is doing violates that right." *Id*. at 314 (citation omitted) (internal quotation marks omitted) (alterations omitted).

Defendants state they "had no reason to know that any of their actions violated the Plaintiff's constitutional rights." Defendants' Motion 10. As already noted, however, the *Jones* case demonstrates it is clearly established sexual misconduct by an officer such as Large while acting under the color of state law is forbidden by the constitution. *See Jones*, 104 F.3d at 628. And the *Shaw* court shows it is clearly established a supervisor can be found to be liable for a subordinate's constitutional infractions in a situation such as is presented here. *See Shaw*, 13 F.3d at 798.

Defendants also claim they are entitled to qualified immunity because they were unaware of Large's alleged conduct. As provided above, however, there is sufficient evidence in the record for a jury to conclude Defendants knew or should have known of Large's alleged misconduct.

Consequently, the Court holds Defendants are not entitled to qualified immunity.

### D. *Whether Defendants are "persons" under 42 U.S.C. § 1983*

Finally, Defendants state they cannot have any liability under 42 U.S.C. § 1983 as they are not "persons" as that term is defined in the statute.

Defendants' argument is made on the mistaken premise Doe-3 is suing them in their official capacities. As already noted, however, she is suing them in their individual, or personnel, capacities. And "officers sued in their personal capacity come to court as individuals." *Hafer v. Melo*, 502 U.S. 21, 27 (1991). And, "[a] government official in the role of personal-capacity defendant . . . fits comfortably within the statutory term 'person.'" *Id*.

Therefore, the Court rejects this argument, too.

## VI. CONCLUSION

Based on the foregoing discussion and analysis, Defendants' motion for summary judgment is **DENIED**.

**IT IS SO ORDERED**.

Signed this 28th day of February, 2019, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
